JENNIFER ROBINSON, Bar No. 148333
JenRobinson@littler.com
STACEY E. JAMES, Bar No. 185651
sjames@littler.com
VANI PARTI, Bar No. 308468
vparti@littler.com
LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, California 92101.3577
Telephone: 619.232.0441
Facsimile: 619.232.4302

Attorneys for Defendant
NAVIHEALTH, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JILL KATHLEEN BENTLEY,<br><br>Plaintiff,<br><br>v.<br><br>NAVIHEALTH, INC. AND DOES 1-10, INCLUSIVE,<br><br>Defendants. | Case No. **'19CV1298 JLS  WVG**<br><br>**NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446** |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND PLAINTIFF JILL KATHLEEN BENTLEY and HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant NAVIHEALTH, INC. ("Defendant") hereby removes the above-captioned action from the Superior Court of the State of California, County of San Diego, Case No. 37-2019-00025046-CU-OE-CTL, to the United States District Court, Southern District of California pursuant to 28 U.S.C. sections 1332, 1441 and 1446.

This Notice is based upon the original jurisdiction of the federal district court over the parties under 28 U.S.C. section 1332 ("Section 1332") based upon complete diversity of citizenship.

Defendant makes the following allegations in support of its Notice of Removal:

## I.  STATEMENT OF JURISDICTION AND VENUE

1. This Court has original jurisdiction under 28 U.S.C. section 1332(a)(1), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), in that it is a civil action wherein the amount in controversy for the named plaintiff exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, and it is between "citizens of different States." As set forth below, this case meets all of Section 1332's requirements for removal and is timely and properly removed by the filing of this Notice.

2. Plaintiff originally brought this action in the Superior Court of the State of California, County of San Diego. Therefore, venue lies in the Southern District of California pursuant to 28 U.S.C. §§ 84(d), 1441(a), and 1446(a).

## II.  PLEADINGS, PROCESSES, AND ORDERS

3. This lawsuit arises out of Plaintiff Jill Kathleen Bentley's ("Plaintiff") employment with Defendant. On or about May 15, 2019, Plaintiff filed a class action complaint in the Superior Court of the State of California, County of San Diego, entitled *Jill Kathleen Bentley v. Navihealth, Inc. and Does 1-10*, Case Number 37-2019-

00025046-CU-OE-CTL (hereinafter "Complaint"). The Complaint asserts the following six causes of action: (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to pay overtime wages; (4) ) failure to provide compliant itemized wage statements; (5) failure to pay all wages on separation; and (6) violation of California Business and Professions Code §§17200, *et seq*. Attached as **Exhibit "A"** is a true and correct copy of the Complaint (hereinafter "Complaint"). (*See* Declaration of Stacey James in Support of Defendant's Notice of Removal to Federal Court ["James Decl."], ¶ 2.)

4. On May 31, 2019, Plaintiff mailed to Defendant's counsel a copy of the Complaint via U.S. mail, along with a Notice and Acknowledgment of Receipt – Civil, Summons, Complaint, ADR Materials, and Notice of Case Assignment. Attached hereto as **Exhibit "B"** is a true and correct copy of the Notice and Acknowledgment of Receipt – Civil; attached hereto as **Exhibit "C"** is a true and correct copy of the Summons; attached hereto as **Exhibit "D"** is a true and correct copy of the ADR Materials and attached hereto as **Exhibit "E"** is a true and correct copy of the Notice of Case Assignment. (James Decl., ¶¶ 3-5.)

5. On June 20, 2019, Defendant executed and returned the Notice and Acknowledgement of Receipt – Civil. Attached hereto as **Exhibit "F"** is a true and correct copy of the executed Notice and Acknowledgment of Receipt – Civil. (James Decl., ¶ 6.)

6. On July 11, 2019, Defendant filed its Answer to the Complaint in the Superior Court of the County of San Diego. Attached hereto as **Exhibit "G"** is a true and correct copy of Defendant's Answer. (James Decl., ¶ 7.)

7. Pursuant to 28 U.S.C. section 1446(a), the attached exhibits constitute all process, pleadings and orders served upon Defendant or filed or received in this action by Defendant. To Defendant's knowledge, no other pleadings, process, or orders related to this case have been filed in the San Diego Superior Court and served on any Doe defendants. (James Decl., ¶¶ 8-10.)

### III. TIMELINESS OF REMOVAL

8.  An action may be removed from state court by filing a notice of removal – together with a copy of all process, pleadings, and orders served on the defendant – within thirty days of defendant receiving service of the initial pleading. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (the thirty-day removal period runs from the service of the summons and complaint).

9.  Plaintiff mailed the Summons and Complaint to Defendant along with a Notice and Acknowledgment of Receipt – Civil on May 31, 2019. Pursuant to California Code of Civil Procedure Section 415.30(c), service of a summons and complaint by mail with a Notice and Acknowledgment of Receipt is deemed complete on the date a written acknowledgment of receipt of summons is executed. Defendant executed the Notice and Acknowledgment of Receipt on June 20, 2019. Therefore, service of the Summons and Complaint was effective on June 20, 2019.

10. Pursuant to 28 U.S.C. section 1446(b), this Notice of Removal is therefore timely filed because it has been filed within thirty (30) days after Defendant was effectively served with the Summons and Complaint or before July 19, 2019 and within one year after commencement of this action.

### IV. DIVERSITY JURISDICTION PURSUANT TO SECTION 1332

11. 28 U.S.C. Section 1332(a) provides, in relevant part, as follows:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between –
>
> (1)   citizens of different States[.]

12. This action is a civil action over which this Court has original jurisdiction based on diversity of citizenship pursuant to Section 1332(a), and is one which may be removed to this Court by Defendant pursuant to 28 U.S.C. section 1441(b) because it is a civil action between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs, as set forth below.

13. For diversity purposes, a person is a "citizen" of the State in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he or she resides with the intention to remain, or to which he or she intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Plaintiff has been employed in and resides in the State of California in Kern County, and is therefore a citizen of the State of California. (Exhibit A, Complaint ¶ 4 ["Plaintiff Jill Bentley is, and at times mentioned in the Complaint was, a resident of Kern County, California."] and ["Plaintiff was employed by NaviHealth as a Care Coordinator in California from in or about February 2015 through in or about October 2017."].) *See Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (residency can create a rebuttable presumption of domicile supporting diversity of citizenship); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, *22 (E.D. Cal. 2008) (place of residence provides "prima facie" case of domicile).

14. For diversity jurisdiction purposes, a corporation is deemed a citizen of its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). The principal place of business is "where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77; 130 S. Ct. 1181, 1192-93 (2010). Here, Defendant is a corporation incorporated under the laws of Delaware. (Declaration of Bernard Carroll ["Carroll Decl."], ¶ 2.) Defendant's headquarters and principal place of business is also located in the State of Tennessee. (Carroll Decl., ¶¶ 2-3.) Defendant's officers direct, control, and coordinate Defendant's activities from Tennessee. (Carroll Decl., ¶ 4.)

15. Thus, Defendant is a citizen of Delaware and Tennessee.

16. The Complaint names as defendants "DOES 1-10, inclusive." Pursuant to 28 U.S.C. section 1441(a), however, the citizenship of defendants sued under fictitious names must be disregarded for the purpose of determining diversity jurisdiction. *See Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998).

LITTLER MENDELSON, P.C.
501 W Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

5.

17. As more fully set forth below, the amount in controversy in the Complaint exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.[1]

## V. THE AMOUNT IN CONTROVERSY REQUIREMENT IS MET

18. Plaintiff's Complaint is silent as to the total amount of damages; however, a reasonable reading of Plaintiff's Complaint is sufficient to indicate that the sought after relief undoubtedly exceeds the $75,000 threshold required pursuant to 28 U.S.C. § 1332(a).

19. To measure the amount in controversy, the Ninth Circuit instructs courts to first consider whether it is "facially apparent" from the complaint that the jurisdictional amount has been satisfied. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). In measuring the amount in controversy, "a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (internal quotations and brackets omitted).

20. If the complaint does not clearly establish the jurisdictional amount, then the court may consider facts in the removal petition. *Singer*, 116 F.3d at 377; *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); ("[W]e reiterate that the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint."). The ultimate inquiry is what amount is put "in controversy" by plaintiff's complaint, not what defendant might actually owe. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005). Defendant's burden is not high – it simply must show, by preponderance of the evidence, that the amount in controversy

---

[1] The alleged damages calculations contained herein are based upon the allegations in the Complaint, and are for purposes of removal only. Defendant expressly denies that Plaintiff is entitled to any relief whatsoever. Defendant expressly reserves the right to challenge Plaintiff's alleged damages in this case.

exceeds $75,000. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

21. Economic damages, non-economic damages, general damages, attorneys' fees, punitive damages, and injunctive relief are all included in determining the amount in controversy. *See Anthony v. Sec. Pac. Fin. Servs., Inc.*, 75 F.3d 311, 315 (7th Cir. 1996) (prayer for actual and punitive damages included in determining amount in controversy); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (prayer for attorneys' fees included in determining the amount in controversy where potentially recoverable by statute). Moreover, all claims can be aggregated to meet the minimum jurisdictional amount. *See Bank of Cal. V. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972).

22. Here, Plaintiff does not allege the amount in controversy in the Complaint. In the Prayer for Relief, Plaintiff seeks compensatory damages, statutory penalties, and attorneys' fees, among other relief. (Exhibit A, Complaint, Prayer for Relief.)

23. Plaintiff alleges a cause of action for violations of the Unfair Competition Law ("UCL"), Business and Professions Code section 17200, *et seq.* (Exhibit A, Complaint, ¶¶ 60-64.) Alleging a UCL violation may extend the statute of limitations for Plaintiff's meal period, rest period, overtime, and unpaid wage claims from three to four years from the filing of the Complaint, which in this case, extends the statute of limitations to May 15, 2015. *See* Cal. Bus. & Prof. Code § 17208; *Cortez v. Purolater Air Filtration Products Co.*, 23 Cal. 4th 163, 178-79 (2000) (four-year statute of limitations for restitution of wages under the UCL).

### A. Plaintiff's Meal Period and Rest Period Claims Put $13,294.32 In Controversy.

24. In the First and Second Causes of Action, Plaintiff seeks payments for alleged failure to provide meal and rest periods in violation of Labor Code sections 226.7 and 512 and the applicable IWC Wage Order. (Exhibit A, Complaint, ¶¶ 31-38.) Specifically, Plaintiff alleges "Plaintiff and Class Members *regularly* worked in excess

of five hours a day without being afforded at least a half-hour meal period in which they were relieved of all duties…"; "Plaintiff and Class members *regularly* worked in excess of ten (10) hours a day without being afforded a second half-hour meal period in which they were relieved of all duties…"; and "Defendants are liable to Plaintiff and Class Members for one hour of additional pay at their regular rate of compensation for each workday that they were not provided with proper meal periods pursuant to Labor Code § 226.7" (Exhibit A, Complaint, ¶¶ 32-34)(emphasis added).

25. Plaintiff further alleges "Plaintiff and Class Members regularly worked in excess of three and a half hours a day without being afforded at least a paid 10-minute rest period in which they were relieved of all duties…"; "For the four (4) years preceding to the filing of this lawsuit, Defendants failed to provide Plaintiff and Class Members the required rest periods…"; and "Defendants are liable to Plaintiff and Class Members for one hour of additional pay at their regular rate of compensation for each workday that they were not provided with proper rest periods pursuant to Labor Code § 226.7" (Exhibit A, Complaint, ¶¶ 36-38)(emphasis added).

26. An employee denied rest periods and/or meal periods may be entitled to an additional hour's wages per day for failure to provide meal periods and an additional hour's pay per day for failure to provide rest periods. *Trang v. Turbine Engine Components Techs. Corp.*, 2012 U.S. Dist. LEXIS 179710, at *10 n. 3 (C.D. Cal. 2012) ("if an employee misses both a meal period and a rest period in the same day, she is entitled to two extra hours of pay for that day"); *Marlo v. UPS*, 2009 U.S. Dist. LEXIS 41948, at *21-22 (C.D. Cal. 2009) (same); *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

27. For the four-year period prior to the filing of her Complaint, Plaintiff worked a total of 78 biweekly pay periods and her average biweekly salary was $3,408.58. (Carroll Decl., ¶ 5.) Based on 80 hours per pay period, the hourly equivalent

of Plaintiff's average biweekly salary during this period is an average hourly rate of $42.61 ($3,408.58 / 80 hours). (*Id.*) Thus, using a very conservative calculation, even assuming *arguendo* that Plaintiff is entitled to one hour of premium pay for one missed rest period a week and one missed meal period a week during her employment, the amount in controversy for Plaintiff's rest and meal period claims is calculated as follows: 2 hours premium pay per pay period for missed meal periods + 2 hours premium pay per pay period for missed rest periods x $42.61 hourly rate x 78 pay periods = **$13,294.32**.

### B. Plaintiff's Claim For Failure To Pay Overtime Wages Puts $149,549.40 In Controversy.

28. In the Third Cause of Action, Plaintiff seeks unpaid overtime wages for the four (4) years preceding the filing of this action, calculated "…at the rate of time-and-one-half of the regular rate of pay for all hours worked in excess of eight (8) hours in a day or forty (40) hours in a week and to overtime compensation at twice the regular rate of pay for hours worked in excess of twelve (12) hours per day or in excess of eight (8) hours in a day on the seventh day of work in a particular work week." (Exhibit A, Complaint, ¶ 42.) Plaintiff alleges that "At all times relevant to Plaintiff's Causes of Action, including for the four year period prior to filing of the original complaint in this Action, Defendants classified Plaintiff and Class Members as exempt from the overtime requirements of the applicable California Industrial Welfare Commission ("IWC") Wage Order and the California Labor Code despite the fact that, among other considerations, Plaintiff and Class Members, did not manage any employees, did not exercise discretion or independent judgment as defined by California law, and regularly performed non-exempt work in excess of 50% of the time." (Exhibit A, Complaint, ¶ 20.) Plaintiff also alleges that "At all times relevant, Plaintiff and Class Members *consistently* worked in excess of eight (8) hours in a day, twelve (12) hours in a day, forty (40) hours in a week, and on a seventh consecutive day - and were not paid overtime or double-time compensation." (Exhibit A, Complaint, ¶ 23.) Plaintiff further

alleges that "At all times relevant, Defendants failed to pay overtime wages owed to Plaintiff and Class Members." and "At all times relevant, Plaintiff and Class Members regularly performed non-exempt work in excess of 50% of the time, and thus were subject to the overtime requirements of the applicable IWC Wage Order and the California Labor Code." (Exhibit A, Complaint, ¶¶ 44-45.)

29. Assuming *arguendo* that Plaintiff was not paid overtime wages for at least 15 hours per week during the statutory period (a minimum of 3 hours of overtime per day based on her allegation that she was misclassified as exempt and consistently worked over 8 hours and over 12 hours per day x 5 days per week), Plaintiff's allegations put at least $149,549.40 into controversy. Plaintiff had been classified as an exempt employee throughout her employment with Defendant, including during the relevant statutory period from May 15, 2015. (Carroll Decl., ¶ 5.) For the four-year period prior to the filing of her Complaint, Plaintiff worked a total of 78 biweekly pay periods and her average biweekly salary was $3,408.58. (*Id.*) Based on 80 hours per pay period, the hourly equivalent of Plaintiff's average biweekly salary during this period is an average hourly rate of $42.61 ($3,408.58 / 80 hours). (*Id.*) Thus, assuming *arguendo* that Plaintiff was not paid overtime wages for at least 15 hours per week (*i.e.*, 30 hours per pay period) during the statutory period, the amount in controversy for Plaintiff's overtime is calculated as follows: 30 hours per pay period of unpaid overtime x $63.91 overtime rate per hour (1.5 x $42.61 hourly rate) x 78 pay periods = **$149,549.40.**

  **C. Plaintiff's Waiting Time Penalty Claim Puts $10,226.40 In Controversy.**

30. Plaintiff's Fifth Cause of Action alleges that Defendant "willfully and illegally failed to pay Plaintiff and Waiting Time Subclass Members premium overtime wages owed to them at all times relevant and wages owed under Labor Code § 226.7, Defendants willfully failed and refused, and continue to willfully fail and refuse, to pay

LITTLER MENDELSON, P.C.
501 W Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

10.

Plaintiff and Waiting Time Subclass Members their wages, earned and unpaid, at the time of their discharge from Defendants' employ." (Exhibit A, Complaint ¶ 58.)

31. Under California Labor Code § 203, for each failure to pay an employee all wages owed at the time of separation from employment, the employee is entitled to his or her normal daily wages, for each day the wages are withheld after separation, for a maximum of thirty (30) days. *See* Cal. Civ. Proc. Code ¶ 338(a); *Mamika v. Barca*, 68 Cal. App. 4th 487, 492-94 (1998). The statute of limitations to recover waiting time penalties under Labor Code section 203 is three years. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1398 (2010).

32. Plaintiff's average biweekly salary was $3,408.58. (Carroll Decl., ¶ 5.) Based on 80 hours per pay period, the hourly equivalent of Plaintiff's average biweekly salary during this period is an average hourly rate of $42.61 ($3,408.58 / 80 hours). (*Id.*)

33. Accordingly, assuming *arguendo* that Plaintiff worked, on average, eight hours per day,[2] the amount in controversy for Plaintiff's claim for waiting time penalties under Labor Code section 203 is calculated by multiplying her hourly rate of $42.61 x 8 hours x 30 days = $10,226.40. Thus, Plaintiff's individual claim for waiting time penalties under Labor Code section 203 places at least **$ 10,226.40** into controversy.

### D. Plaintiff's Claim For Attorneys' Fees Puts At Least $25,000 In Controversy.

34. Plaintiff also seeks attorneys' fees in her Complaint.(Exhibit A, Complaint, ¶¶ 48, 55, 64, Prayer for Relief.) The Court must consider attorneys' fees in determining whether the amount in controversy is met, since the California Labor Code allows recovery of such fees. It is well-settled that claims for statutory attorneys' fees are to be included in the amount in controversy. *See, e.g., Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *cert. denied*, 127 S. Ct. 157 (2006); *Galt*, 142 F.3d

---

[2] This assumption is conservative given Plaintiff's allegation that she "*consistently*" worked in excess of eight (8) hours in a day, twelve (12) hours in a day, forty (40) hours in a week, and on a seventh consecutive day - and were not paid overtime or double-time compensation." (Exhibit A, Complaint, ¶ 23.)

LITTLER MENDELSON, P.C.
501 W Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

11.

at 1156 ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). In the Ninth Circuit, future attorneys' fees through trial can be considered as well as attorneys' fees incurred through the filing of the Complaint. *Galt*, 142 F.3d at 1155; *Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1034 (N.D. Cal. 2002).

35. The Court may examine the nature of the action and the relief sought and take judicial notice of attorneys' fee awards in similar cases. *See, e.g., Simmons*, 209 F.Supp.2d at 1035 (noting that attorneys' fees in individual employment cases often exceed damages). Attorneys' fees awards can be significant in wage and hour cases. *See, e.g., Lippold v. Godiva Chocolatier, Inc.*, 2010 WL 1526441, at *3 (N.D. Cal. April 15, 2010) (denying plaintiff's motion to remand by finding that the anticipated attorneys' fees were sufficient to exceed the $75,000 threshold where plaintiff's wage and hour claims totaled only $38,747). It is safe to assume that attorneys' fees for Plaintiff in this case will be **at least $25,000**—and likely significantly more.

## SUMMARY

36. By virtue of the claims asserted in this case, the preponderance of the evidence clearly indicates Plaintiff is seeking well in excess of $75,000 in damages:

| Plaintiff's Alleged Claim | Amount in Controversy |
|---|---|
| Unpaid Meal and Rest Premiums | $13,294.32 |
| Unpaid Overtime | $149,549.40 |
| Waiting Time Penalties | $10,226.40 |
| Attorneys' Fees | $25,000.00 |
| **Amount in Controversy** | **$198,070.12** |

37. Based on the foregoing analysis, diversity removal is proper. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992). Specifically, estimated conservatively, Plaintiff's potential recovery on her claims for meal and rest period

12.

premiums, unpaid overtime wages, waiting time penalties, and attorneys' fees undisputedly surpasses the $75,000 amount in controversy threshold. Moreover, these calculations do not even take into consideration Plaintiff's additional claims, including, *inter alia*, wage statement violation claims and unfair business practices in violation of California Business and Professions Code section 17200, *et seq.*

38. In addition to being facially apparent in the Complaint, based upon the pleadings, it does not appear to a "legal certainty that the claim is really for less than" the amount in controversy minimum. *Spielman v. Genzyme Corp.*, 251 F.3d 1, 5 (1st Cir. 2001) (quoting St. *Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288-89 (1938)). Thus, Defendant has carried its burden of demonstrating by a preponderance of the evidence that the amount in controversy in this matter clearly exceeds the jurisdictional minimum of $75,000.

39. For these reasons, this action is a civil action over which this Court has original jurisdiction pursuant to Section 1332, and which may be removed by Defendant to this Court pursuant to 28 U.S.C. section 1441 based on diversity jurisdiction.

## NOTICE TO PARTIES AND STATE COURT

40. Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Southern District of California, written notice of such filing will be served on Plaintiff's counsel. Copies of this Notice to Federal Court of Removal, as well as the Notice to State Court of Removal, are also being filed with the Clerk of San Diego Superior Court, pursuant to 28 U.S.C. § 1446(d). (James Decl. ¶ 11.)

Dated: July 12, 2019                                     Respectfully submitted,

*s/Vani Parti*
JENNIFER ROBINSON
STACEY E. JAMES
VANI PARTI
LITTLER MENDELSON, P.C.
Attorneys for Defendant
NAVIHEALTH, INC.

FIRMWIDE:164653438.1 101853.1004

LITTLER MENDELSON, P.C.
501 W Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

13.